IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TERRY ALAN BUSH** | * | |
| | * | |
| v. | * | Civil Case No. ELH-14-3062 |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY** | * | |
| | * | |
| ************* | | |

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment. [ECF Nos. 14, 20]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). For the reasons set forth below, I recommend that both motions be denied, that the Commissioner's decision be reversed in part, and that the case be remanded to the Commissioner for further analysis.

Mr. Bush protectively filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") in 2011. (Tr. 115-25). His applications were denied initially and on reconsideration. (Tr. 68-71, 75-76). An Administrative Law Judge ("ALJ") held a hearing on July 15, 2013, at which Mr. Bush was represented by counsel. (Tr. 29-48). Following the hearing, the ALJ determined that Mr. Bush was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 12-24). The Appeals Council denied Mr. Bush's request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Mr. Bush suffered from the severe impairments of status-post lower left extremity amputation (prosthetic leg), back disorder, and neck disorder. (Tr. 14). Despite these impairments, the ALJ determined that Mr. Bush retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except the claimant can perform no more than 2 hours of standing or walking in an 8-hour workday and the claimant can perform no more than occasional postural activities or climbing.

(Tr. 16). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Bush could perform jobs existing in significant numbers in the national economy and that, therefore, he was not disabled. (Tr. 24).

Mr. Bush disagrees. He raises several arguments on appeal: (1) that the ALJ erred in evaluating Listing 1.05; (2) that the ALJ made an inadequate function-by-function assessment; (3) that the ALJ's hypothetical to the VE was incomplete; (4) that the Appeals Council should have allowed the case under the Medical-Vocational Guidelines ("Grids"); (5) that the ALJ did not adequately consider the side effects of Mr. Bush's medications; (6) that the ALJ assigned inadequate weight to the opinions of Mr. Bush's treating physician, Dr. Naylor; and (7) that the ALJ made an erroneous credibility assessment in light of the medical evidence substantiating his conditions. While many of Mr. Bush's arguments lack merit, I am persuaded that the ALJ failed to consider adequately the effect of his persistent sores on his ability to ambulate effectively, both as it pertains to Listing 1.05B and as to his RFC assessment.

Beginning with the unsuccessful arguments, the ALJ engaged in a specific function-by-function assessment of Mr. Bush's abilities. (Tr. 22). In addition, the ALJ's conclusion that Mr. Bush was capable of a restricted range of sedentary work contained certain implied findings about his ability to sit, lift, and carry. *See Harper v. Comm'r, Soc. Sec.,* No. GLR-13-909, 2014 WL 176777, at *3 (D. Md. Jan. 14, 2014) (unpublished decision) (determining that a limitation

to sedentary work includes an implied finding of certain abilities to sit and stand). Those implied findings are sufficient in light of the ALJ's thorough discussion of the medical evidence. *See* (Tr. 16-23).

Mr. Bush further makes the related arguments that the ALJ assigned inadequate weight to the opinions of his treating physician, Dr. Naylor, and that the hypothetical posed to the VE was inadequate because it did not include certain limitations suggested by Dr. Naylor. (Tr. 20-23, 25-28). However, with the exception of the deficient listing analysis addressed below, the ALJ provided a complete and detailed explanation of his evaluation of Dr. Naylor's opinions. The ALJ thoroughly summarized Dr. Naylor's treatment records, (Tr. 18-20), and his opinions (Tr. 20-22). The ALJ explained that the medical treatment records reflected few abnormal findings on examination, and that even Mr. Bush's complaints of pain were not corroborated by his physical examination notes. (Tr. 21-22). The ALJ further noted that Mr. Bush's activities of daily living were more extensive than the significant degree of limitation suggested by Dr. Naylor (specifically "the need to lie down 5 hours during the day"). (Tr. 22). Finally, the ALJ cited the fact that Dr. Naylor had opined that the degree of limitation he found had been present since 1986 (the year of Mr. Bush's amputation). *Id.* Mr. Bush performed substantial gainful employment for many years after 1986, which severely undermines the credibility of Dr. Naylor's assessment. Accordingly, the ALJ appropriately assigned little weight to Dr. Naylor's opinions and was not required to include each of Dr. Naylor's limitations in the RFC assessment or in the hypothetical posed to the VE.

Next, Mr. Bush's contention that the ALJ failed to consider his medication side effects does not independently warrant remand, given the lack of medical documentation supporting any meaningful side effects. Pl. Mem. 24-25. However, Mr. Bush is correct that the ALJ acknowledged his complaints of dizziness and insomnia, but did not specifically address those

allegations. (Tr. 16). Thus, because the case is being remanded on other grounds, the ALJ should make specific credibility determinations regarding Mr. Bush's allegations of impairing side effects. The remainder of the ALJ's credibility assessment is generally well-supported, with the exception of the inferences the ALJ draws from the fact that Mr. Bush switched primary-care physicians when his prior physician expressed an unwillingness to complete disability paperwork. (Tr. 16, 17, 21). Because a claimant bears the burden of producing medical evidence to support a claim of disability, *see Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, (1987), a claimant cannot be faulted for seeking a physician who is willing to complete the required forms to allow him to meet that burden. As described, the original physician declined to fill out the paperwork because of a general policy, not because he held any particular view as to Mr. Bush's disability or lack thereof. *See* Tr. 35-36 ("I've asked him two or three times if he could do this paper work, and they just said they don't do it."). The ALJ drew the conclusion, based on the fact that the original physician was willing to complete unemployment forms but unwilling to complete disability paperwork, that the physician must have determined that Mr. Bush did not meet the standards for disability. However, there are many reasons why a physician might be willing to complete one type of forms but not another. Thus, the ALJ's unsubstantiated conclusion that Mr. Bush's decision to change primary physicians somehow impacts the credibility of either Mr. Bush or his new physician is baseless. (Tr. 17, 21).

In his final unsuccessful argument, Mr. Bush contends that the Appeals Council should have awarded benefits as of the date of his fiftieth birthday in July of 2014, because he entered a different category under the Medical–Vocational Guidelines ("the Grids") on that date. Pl. Mot. 24. I concur with the reasoning set forth in *McGreevy v. Astrue*, No. JKS-10–123, 2010 WL 4823672, *1–2 (D. Md. Nov. 22, 2010). In *McGreevy*, the Court reasoned that the Appeals Council is only charged with granting review if, in relevant part, "the action, findings, or

conclusions of the administrative law judge are not supported by substantial evidence." *Id.* at *1; 20 C.F.R. § 416.1470(a)(3). In this case, at the time of the ALJ's opinion, Mr. Bush was only 49 years old, rendering him "not disabled" under the Grids. His contention is that because he turned 50 about two months prior to the Appeals Council's denial of review, it should have awarded benefits. However, "[a] rule that the Appeals Council must grant review whenever a change in circumstances occurs between the time of the ALJ's decision and the time the case reaches the Appeals Council would fundamentally alter the Appeals Council's role." *McGreevy*, 2010 WL 4823672, at *1. The Appeals Council is only to consider new evidence if it pertains to the period prior to the ALJ's opinion, and the change in Mr. Bush's age clearly does not. *See* 20 C.F.R. § 416.1470(b). Accordingly, the denial of review does not warrant remand.

However, Listing 1.05B (Amputation due to any cause) required additional consideration in light of the record evidence. Listing 1.05B is satisfied where, in relevant part, a claimant establishes amputation of:

> one or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, as defined in 1.00B2b, which have lasted or are expected to last for at least 12 months.

The ALJ rested his conclusion that Mr. Bush did not meet the listing on the fact that, according to Dr. Naylor, Mr. Bush can ambulate using a single cane with his prosthetic device. (Tr 15). What the ALJ failed to consider is the fact that, according to Mr. Bush, the reoccurring sores on his stump render him unable to use his prosthesis on a fairly regular basis. Mr. Bush testified that the infections occur about six or seven times per month and last for "a period of probably three days, if I stay off of it, and take the antibiotics." (Tr. 44). He testified that by "stay off of it," he means that he does not wear the prosthesis and instead uses crutches. *Id.* While the medical evidence does not expressly discuss the appropriate treatment during an outbreak of

sores, it does substantiate the recurring nature of the problem.[1] (Tr. 218, 222, 269, 284, 296, 323, 335, 342). The ALJ did not acknowledge that evidence. While the ALJ discussed testimony about certain activities of daily living that Mr. Bush can perform, he did not address whether those tasks can be performed on an everyday, consistent basis or simply during times when Mr. Bush is able to use his prosthesis. *See, e.g.,* (Tr. 22) (discussing Mr. Bush's ability to engage in household activities and drive a car). That analysis is potentially relevant not only to Listing 1.05, but also to a consideration of whether Mr. Bush would be able to sustain employment as described in the RFC assessment if he were unable to use his prosthesis on a regular basis. Accordingly, remand is appropriate for the ALJ to fulfill his duty of explanation. In so recommending, I express no opinion as to whether the ALJ's ultimate conclusion that Mr. Bush was not entitled to benefits is correct or incorrect.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Defendant's Motion for Summary Judgment [ECF No. 20];

2. the Court DENY Mr. Bush's Motion for Summary Judgment [ECF No. 14];

3. the Court REVERSE IN PART, due to inadequate analysis, the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g);

4. the Court REMAND this case to the Commissioner for further proceedings in accordance with this opinion; and

5. the Court close this case.

---

[1] The Commissioner's suggestion that Mr. Bush has failed to establish that he is medically unable to use his prosthesis during an outbreak of sores, Def. Mot. 16, contravenes common knowledge. Sores cannot heal if subject to sustained friction. Accordingly, while the records do not reflect specific medical instructions, on every occasion, to refrain from use of the prosthesis when sores are present, the lack of such medical evidence is not dispositive here.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated:  July 24, 2015                                         /s/
                                                                      Stephanie A. Gallagher
                                                                      United States Magistrate Judge